9474

WILSON v. MAGILL *ET AL.*

(89 S. E. 547.)

1. MORTGAGES—FORECLOSURE—DISPOSITION OF PROCEEDS.—On foreclosure, a mortgagee of two tracts owned by the same mortgagor may be required by a junior mortgagee of one tract to exhaust the proceeds of the sale of the tract on which there is but one mortgage before proceeding against the other.

2. MORTGAGES— FORECLOSURE— DISPOSITION OF PROCEEDS.— The rights of mortgagees of different tracts as to the order of application of proceeds of their sale on foreclosure cannot be defeated or impaired by the mortgagor or his grantees by any subsequent conduct.

3. MORTGAGES — FORECLOSURE — DISPOSITION OF PROCEEDS. — A judgment creditor takes the place of the judgment debtor and cannot disturb the rights of mortgagees of different tracts of judgment debtor as to the order of application of proceeds of sale of the tracts on foreclosure.

---

FOOTNOTE.—In reference to order of sale of parcels of land conveyed successively by mortgagor as affected by assumption of mortgage debt, see notes in 31 A. & E. Ann. Cas. 1914a, 715.

Before Hon. F. L. Willcox, special Judge, Abbeville, February, 1916. Affirmed.

Action to foreclose by Hugh Wilson against W. T. Magill and others. From a decree for complainant, the defendant, Anderson Phosphate & Oil Company, appeals.

*Messrs. Graydon & Graydon,* for appellant. As to rule of priority cite: Adams Eq., p. 315; Pom. Eq. Juris., sec. 678; Harper's Eq. 164; Bispham's Eq. 62.

*Messrs. Mitchell & Smith,* and *Wm. P. Greene,* for Interstate Chemical Corporation, respondent, cite: *As to two fund doctrine:* 3 Pom. Eq. Juris., sec. 1414; 19 A. & E. Enc. of L. 1256; 19 Cyc. 1256; 1 S. C. 129; 33 S. C. 142; Harper's Eq. 164. *As to liens:* Pom. Eq. Juris., secs. 685 and 721; 54 Atl. 857; 17 N. J. Eq. 300; 90 Am. Dec. 601; 41 N. J. Eq. 432; 5 Atl. 452; 43 N. J. Eq. 295; 14 Atl. 811; 27 N. J. Eq. 355; 10 S. E. 798; Adam's Eq. 320; 60 Atl. 330; 37 S. C. 594.

July 19, 1916.

The opinion of the Court was delivered by Mr. Justice Fraser.

W. T. Magill was in the fertilizer business and much involved in debt. A history of this litigation, as disclosed by the pleadings and the testimony, is as follows:

"W. T. Magill, during the years 1910, 1911 and 1912, became heavily indebted to the Anderson Phosphate & Oil Company, for fertilizers bought of them, and intrusted to him by the company, to sell for them. Being unable to collect the accounts and notes, they commenced suit against him, in the Court of Common Pleas for Abbeville county on January 30, 1913. This action was defended for Magill by W. P. Greene, Esq., and resulted in a verdict in favor of

the company against Magill for $7,021.44, on which verdict judgment was duly entered on April 11, 1913.

"In the meantime, Magill, on January 20, 1912, executed a mortgage on the 85-acre tract of land described in the complaint to Mary C. Hill, wife of R. M. Hill, for the sum of $2,000. During the years 1911 and 1912 it seems that Magill also became indebted for fertilizers to the Interstate Chemical Corporation, in the sum of $4,546.77, and for which he gave the mortgage in this case for $2,500 on March 1, 1913.

"On the same day that Magill made the mortgage to Hill, he also executed a mortgage on the 85-acre tract of land in favor of Hugh Wilson, the plaintiff in this action, but stated in the mortgage that it was intended to be junior to the Hill mortgage. The Court of Common Pleas for Abbeville county met on the fourth Monday in March, 1913, which fell that year on the 24th day. The case against W. T. Magill was pending, and on the docket for that term of the Court. It was tried during the term, which adjourned about the 4th or 5th of April, for the judgment was entered on April 11, 1913.

"The first five exceptions and the thirteenth raise the point that the mortgage of Magill to the Interstate Chemical Corporation, was given by Magill, and accepted by the Chemical Company, with the intent to hinder, delay, and defraud the creditors of Magill and was void, both under the assignment law, and under the Statute of Elizabeth. The testimony shows beyond any question that Magill was pressed to the wall. The case against him was pending, and to be tried in a few days. He goes to his attorney, in the absence of the Interstate Chemical Corporation, and with no testimony to show that they were pressing him, asks his attorney to draw up a mortgage, covering his land. In a few days, thereafter, the agent of the defendant, appears on the scene and claims to have made inquiry as to Magill's financial condition. He says he asked his attorney, Mr. Greene. Mr.

Greene denies it. Mr. Shaffer, the agent of the Chemical Company, while he claims to have inquired of everybody else, strange to say, never asked Mr. Magill, nor did he examine the records in the clerk's office. But we submit that Mr. Greene, being the attorney for both parties, his knowledge will be imputed to the Chemical Company."

Wilson's mortgage also covers 109 acres of the Magill tract.

Mr. Shaffer says: "I think I inquired of Mr. Greene as to Magill's financial condition."

Mr. Greene says he did not. Mr. Greene denies that he was the attorney for the Chemical Company, and there was no testimony that he was. The appellant claims that there is a presumption that an attorney who draws a paper is the attorney for him who receives the benefit from the paper drawn. If that be true, it cannot avail the appellant, because the presumption is, in this case, overcome by the positive testimony. There is no evidence to show that the agent of the Chemical Company knew that Magill was insolvent. There is no evidence that the mortgage to the Chemical Company was other than an attempt to secure a part of its debt by a mortgage of a part of the debtor's property.

The next question argued is as to the priority of the Anderson Company and the Chemical Company. There is little difference in the law claimed by the two parties. Both claim advantage of the two fund doctrine. The controversy is as to the application. The respondent submits a drawing, from which we can make an application of the doctrine:

Sondley Tract.—(1) Hill mortgage; (2) Wilson mortgage; (3) Anderson judgment (title thereunder).

Magill Tract.—109. (1) Wilson; (2) Chemical Co.; (3) Anderson Co.

91. (1) Chemical Co.; (2) Anderson Co.

The appellant claims that where there is an equity and a legal title, the legal title must prevail. It is admitted that if the mortgage is sustained, neither the mortgagor nor one

who claims under him can defeat or impair the rights of the mortgagee.    It goes for the saying that if there is enough property to pay all the debts, then a question of priorities is academic.    The only question, therefore, is as to the shares of the parties in a sum that is too small to pay all in full. The appellant has the legal title to the Sondley tract, and it is upon this legal title that appellant bases its claim.

Now look at the diagram.    It will be seen that the Hill mortgage is first and covers only the Sondley tract.    In any event the Sondley tract must be sold to pay the Hill mortgage, and appellant's legal title destroyed, and appellant's right as the holder of the legal title passes out of the case.

At the time of the execution of the mortgage to the Chemical Company (whose rights cannot be impaired) Wilson had a mortgage on the Sondley tract and the Magill tract. The Chemical Company only on the Magill tract.

1–3    Under the two fund doctrine the Chemical Company had the right to require Wilson to exhaust the Sondley tract before going on the Magill tract.    This right could not be defeated or impaired by the mortgagor or his grantee by any subsequent conduct.    The judgment creditor takes the place of the judgment debtor.    It is thus seen that the Chemical Company is prior to the appellant.

Appellant groups exceptions 6-15 under this one head. These exceptions are overruled, and the judgment affirmed.